## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

SAMUEL MANRIQUEZ,

      Plaintiff,

v.                                    CIVIL ACTION NO.   2:22-cv-00406

KANAWHA COUNTY SHERIFFS DEPARTMENT, et al.,

      Defendants.

### MEMORANDUM OPINION AND ORDER

This action was referred to the Honorable Dwane L. Tinsley for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636. On December 5, 2025, Judge Tinsley submitted his Proposed Findings & Recommendation ("PF&R"), [ECF No. 91], recommending that the court **GRANT** Defendants' Motion for Summary Judgment, [ECF No. 71], with respect to the Plaintiff's claim against the Kanawha County Sheriff's Department ("the KCSD") or Kanawha County Commission ("the KCC"), but **DENY** the motion with respect to Plaintiff's claims against Defendants Cochran and Keadle and thereafter set the matter for trial on those claims. The Defendants filed objections to the PF&R on December 19, 2025, [ECF No. 92], and the Plaintiff replied on January 30, 2026, after the deadline.[1] The matter is ripe for review.

---

[1] The court will not consider the Plaintiff's late reply, [ECF No. 93].

## I.    BACKGROUND

This matter arises from Plaintiff's arrest.[2] On February 17, 2021, Kanawha County Officers Keadle and Cochran ("Officers") searched a residence for Plaintiff who was hiding underneath the house in a crawl space. Officer Cochran suspected that Plaintiff was somewhere in the basement, likely hiding, based on the circumstances of the residence. After identifying the crawl space as a potential hiding spot, Officer Keadle arrived and deployed the canine unit ("the K9"). The K9 barked, indicating that it had found Plaintiff.

Here, the versions of events diverge. According to Plaintiff, the K9 left the crawl space, and Officer Cochran entered the space to retrieve Plaintiff. Once out of the crawl space, Officer Cochran restrained Plaintiff while Officer Keadle commanded the K9 to bite Plaintiff. Plaintiff passed out and regained consciousness multiple times before being transported to the hospital where he had multiple injuries—long red and bleeding scratches and bites across his right arm, back, and face.

Defendants, on the other hand, assert that the K9 successfully apprehended Plaintiff and pulled him out of the crawlspace. Once out of the crawl space, the K9 was ordered to release Plaintiff, and it did. Plaintiff continued to resist and attempted to flee before being handcuffed by Officers.

This case began on September 22, 2022, when Plaintiff filed his pro se Complaint. On March 3, 2025, Defendants filed a Motion for Summary Judgment. On December 5, 2025, the Magistrate Judge filed his PF&R, to which the Defendants objected in part. For the reasons that follow, the PF&R will be adopted, and the matter will be set for trial.

---

[2] The facts here are abbreviated and only relate to the specific objections made by Defendants. The record is more fully discussed in the PF&R and later in this opinion when the court addresses summary judgment.

## II.    LEGAL STANDARD

A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This court is not, however, required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing portions of the report *de novo*, this court will consider the fact that the plaintiff is acting pro se, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

Here, the court will review *de novo* part of the Defendants' motion for summary judgment. A court "should grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

## III.    DISCUSSION

### A.  The *Monell* Claim Against the KCSD or KCC

Considering Plaintiff's *Monell* claim against the KCSD or KCC, Judge Tinsley recommends granting Defendants' Motion for Summary Judgment. [ECF No. 91, at 9–12].

3

Specifically, the motion should be granted in part because Plaintiff did not offer any factual support for his claim that the county entity Defendant failed to properly train its officers. *Id.* at 11. I agree, and neither the Defendants nor the Plaintiff himself objects to this finding. Accordingly, the court **ADOPTS** the PF&R and **GRANTS** Defendants' Motion for Summary Judgment, [ECF No. 71], as to the Plaintiff's *Monell* claim.[3]

### B. The Excessive Force Claim Against Officers Cochran and Keadle

Defendants, however, object to the PF&R as to Plaintiff's excessive force claim against Kanawha County Officers Cochran and Keadle. [ECF No. 92]. Defendants assert that the use of the K-9 was "constitutionally reasonable and supported by the evidence" such that there is no genuine dispute of material fact that the officers are entitled to qualified immunity. *Id.* at 2; *see also id.* at 4 ("[T]he excessive force claim against the defendants should be dismissed based on the facts and qualified immunity."). Defendants further ask this court to discount Plaintiff's "self-serving allegations" and instead find that there is no genuine issue of material fact of Defendants' version of events as supported by multiple reports from officers at the scene. *Id.* at 2. Despite the Defendants' assertions, the court cannot ignore the Plaintiff's sworn affidavit describing the incident and accompanying photographs of his injuries. Accordingly, summary judgment cannot be granted.

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend IV. That constitutional protection includes the "right to be free

---

[3] No review, *de novo* or otherwise, is required. A district court "shall make a de novo determination of those *portions* of the report or *specified* proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (emphasis added); *see* Fed. R. Civ. P. 72(b)(3). This court is not, however, required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

of 'seizures effectuated by excessive force.'" *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (quoting *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006)).

An officer's use of force is analyzed under an objective standard. *Id.* The court considers whether an officer's actions were "objectively reasonable" in light of the facts and circumstances he confronted, without regard to his motivation, intention, or subjective understanding. *Id. See also Kentucky v. King*, 563 U.S. 452, 464 (2011) (The Court has "repeatedly rejected" the subjective approach in Fourth Amendment analysis.); *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (*first citing Scott v. United States*, 436 U.S. 128, 137–39 (1978) *and then citing Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

Here, the court must assess the facts and circumstances of the Defendants' use of force against the Plaintiff. Two versions of events emerge, and both are supported by the record.

Plaintiff, by sworn affidavit and as testified to in his deposition, asserts that while he was hiding under the crawl space of the house, Defendants were ripping up floorboards, cursing him, and looking for a way to retrieve him. [ECF No. 74-1, at 3–4] (Pl.'s Aff.); [ECF No. 71-6, at 2] (Pl.'s Dep.). After a second and final attempt at using a K9 to remove Plaintiff from the crawl space, Defendant Cochran entered the crawl space with his gun drawn and a flashlight on. [Pl.'s Aff., at 3]; [Pl.'s Dep., at 3–4]. Defendant Cochran found Plaintiff, who complied with the officer's instructions as they left the space. [Pl.'s Aff., at 3]; [Pl.'s Dep., at 3–4].

Once they exited the crawl space, Plaintiff asserts, Defendant Keadle commanded the K9 to bite Plaintiff while Defendant Cochran held both his arms. [Pl.'s Aff., at 4]; [Pl.'s Dep., at 4–5]. Plaintiff then passed out. [Pl.'s Aff., at 4]. Plaintiff submitted photos that show long red

5

marks—nearly all of them having pierced the skin and bleeding—on Plaintiff's back and arms. [ECF No. 74-3 to 74-6]; [Pl.'s Dep., at 5] (In his deposition, Plaintiff stated that the K9 bit him at least "10 to 12 times" on "both arms, and [his] back and [his] face."). Photos also show red and bloodied marks on Plaintiff's face. [ECF No. 74-3].

Defendants Keadle and Cochran tell a different story. Defendants, looking for Plaintiff, called out several times to announce their presence as they suspected that Plaintiff was in the crawl space. [ECF No. 71-2, at 4] (arrest narrative). The K9 was placed into the crawl space, barked to indicate Plaintiff's presence, and apprehended Plaintiff by biting his arm. [ECF No. 71-3, at 1]; [ECF No. 71-2, at 4]. The K9 then pulled Plaintiff out of the crawl space, and Defendant Keadle commanded the K9 to release. [ECF No. 71-3, at 1]. Once Plaintiff was removed and surrounded by officers, he continued to resist, attempted to push past officers, and ignored commands to stop. [ECF No. 71-2, at 4].

Clearly, the record presents disputes about the nature of force used against Plaintiff and the need for that force. The court can only grant summary judgment if there is no genuine dispute of material fact. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) ("Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(a))). The record presents multiple genuine disputes material to the excessive force analysis.

And while Defendants challenge Plaintiff's reliance on his own sworn testimony, the court cannot weigh the evidence or determine that one witness is more credible than another. *Id.* at 656; *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Moreover, Plaintiff's sworn statements are supported, at least in part, by the photos of his injuries across his arm and back and face. The court must view the evidence "in the light most favorable to the opposing

party," and here, that is Plaintiff. *Tolan*, 572 U.S. at 657; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Therefore summary judgment cannot be granted.

In the same way, these genuine disputes of material fact preclude the court from granting summary judgment to the Defendants on qualified immunity. Qualified immunity is a two-pronged analysis where the court first asks whether the facts—in the light most favorable to the plaintiff—show that officers violated a federal right. *Tolan*, 572 U.S. at 655–56. Second, the court asks "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Under *both* inquiries, the court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," that is, Defendants Cochran and Keadle. *Id.*

Here, there are genuine disputes over Officers' actions as well as the Plaintiff's. Those disputes necessarily impact the court's analysis of whether Officers violated Plaintiff's federal rights. For example, in Plaintiff's version of events Officer Keadle commanded the K9 to bite the Plaintiff after he was compliant and restrained by Officer Cochran. But in Defendants' version they used the K9 to retrieve the Plaintiff from a crawl space when no officer could himself. Those factual disputes are material to the court's analysis of the first prong of qualified immunity. So too does the court's analysis of a "clearly established" right, the second prong, change based on the Plaintiff's actions and Defendants' responsive force. On that point, as well, the facts are disputed.

Based on the genuine disputes of material fact, as demonstrated in the record, summary judgment cannot be granted.

## IV.    CONCLUSION

For these reasons, the Defendants' objections are **OVERRULED**. The court adopts and incorporates herein the PF&R and orders judgment consistent therewith. The court **GRANTS** the Defendant's Motion for Summary Judgment, **[ECF No. 71]**, with respect to the Plaintiff's claim against the Kanawha County Sheriff's Department (or Kanawha County Commission) but **DENIES** the motion with respect to Plaintiff's claims against Defendants Cochran and Keadle. The matter will be set for trial on the remaining claims by a separate order.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:        March 26, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

8